CASE LOMBARDI & PETTIT
A LAW CORPORATION

**MARK G. VALENCIA        6783-0**
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Tel. No.: (808) 547-5400
Fax No.: (808) 523-1888
E-Mail:  mvalencia@casebigelow.com

Attorney for Plaintiff
**YUMIKO WAKAZURU**

### IN THE UNITED STATES DISTRICT COURT

### STATE OF HAWAII

| | |
|---|---|
| YUMIKO WAKAZURU, | ) CIVIL NO.:  09-00267 SOM-KSC |
| | ) (DECLARATORY JUDGMENT) |
| Plaintiff, | ) |
| vs. | ) FINDINGS AND |
| | ) RECOMMENDATION TO GRANT |
| BRUCE SHIGEO MITSUDA, | ) PLAINTIFF YUMIKO |
| | ) WAKAZURU'S MOTION FOR |
| Defendant. | ) DEFAULT JUDGMENT AGAINST |
| | ) DEFENDANT BRUCE SHIGEO |
| | ) MITSUDA |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

28855-1 / 1038674.1

## FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF YUMIKO WAKAZURU'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT BRUCE SHIGEO MITSUDA

Before the Court is Plaintiff YUMIKO WAKAZURU's ("Wakazuru") Motion for Default Judgment Against Defendant Bruce Shigeo Mitsuda ("Mitsuda"), filed September 1, 2009. Mitsuda was served with a copy of the Motion, but did not file an opposition.

This matter came on for hearing on October 5, 2009. Mark G. Valencia, Esq., appeared on behalf of Wakazuru. There was no appearance by or on behalf of Mitsuda. After careful consideration of the Motion, the supporting memoranda, and the arguments of counsel, the Court FINDS AND RECOMMENDS that the Motion be GRANTED.

## BACKGROUND

Wakazuru is a permanent resident alien of the United States and domiciled in the State of Hawaii. Mitsuda is a citizen of the State of California. At all relevant times, Wakazuru owned a condominium unit located at 555 University Avenue, Honolulu, Oahu, Hawaii and identified as TMK No. 1-2-7-13-8-204 ("the Property").

On or about June 17, 2005, Mitsuda signed a Deposit Receipt Offer and Acceptance with a reference date of June 17, 2005 ("DROA") in which he offered to purchase the Property from Wakazuru.

28855-1 / 1038674.1

On or about June 20, 2005, Wakazuru signed the DROA in which she agreed to sell the Property to Mitsuda.

On or about July 8, 2005, Wakazuru and Mitsuda signed a Counteroffer, which confirmed the agreement to purchase the Property, together with the use of two parking stalls, identified as Nos. 162 and 54.

The purchase price was $399,000.00.

After the Counteroffer was signed, Mitsuda provided a deposit of $10,000.00 ("Deposit") and escrow was opened with Title Guaranty Escrow Services – Kahala Branch.

In accordance with paragraph C-67.2 of the Counteroffer, Mitsuda was required to close escrow within ten days after the sublease for stall 54 was assigned to Wakazuru.

On August 24, 2005, the assignment of the sublease for stall 54 was recorded in Wakazuru's name and Mitsuda was directed to close as required by the Counteroffer.

Mitsuda subsequently refused to close escrow.

Mitsuda was contacted repeatedly by both Wakazuru and Title Guaranty regarding cancellation of escrow, but has refused to sign any cancellation instructions or take any steps to close the transaction.  As a result, the Property has remained in escrow for the past four years.

28855-1 / 1038674.1

A.    <u>Rules Governing Entry of Default Judgment</u>

Under Federal Rule of Civil Procedure ("FRCP") 55(b)(1), the Clerk of the Court may enter default judgment for the plaintiff if the defendant has defaulted by failing to appear and plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]"  <u>See</u> Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the court for default judgment.  <u>See</u> Rule 55(b)(2). If the defendant has appeared in the action, the plaintiff must serve written notice of the application on the defendant at least three days prior to the hearing.  The court may conduct an evidentiary hearing "[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other [.]"  <u>Id.</u>

"'The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)).  However, a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right.  <u>See</u> <u>Warner Bros. Entm't Inc. v. Caridi</u>, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004).  Default judgments are disfavored; cases should be decided on the merits if possible.  <u>See</u> <u>In re Roxford Foods, Inc.</u>, 12 F.3d 875, 879 (9th Cir.

1993).   Thus, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment."   VonGrabe v. Sprint PCS, 312 F. Supp. 2d 1313, 1319 (S.D. Cal. 2004) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).

In determining whether to grant default judgment, the court should consider the following factors:

(1) the possibility of prejudice to the plaintiff,
(2) the merits of the plaintiff's substantive claim,
(3) the sufficiency of the complaint,
(4) the sum of money at stake in the action,
(5) the possibility of a dispute concerning material facts.,
(6) whether the default was due to excusable neglect, and
(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Warner Bros., 346 F. Supp. 2d at 1071-72 (quoting Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).   In addition, a court can deny default judgment where the defendant has appeared and actively defends against the plaintiff's claims.   See VonGrabe, 312 F. Supp. 2d at 1319.

B.   Eitel Factors

Upon consideration of the Eitel factors, the Court finds that the entry of default judgment against Mitsuda is appropriate.   The Court will address each factor in turn.

1.      Possibility of Prejudice to Wakazuru

Wakazuru's Property has been entangled in escrow since 2005.  Mitsuda, who is aware of this litigation, has failed to respond to the First Amended Complaint, despite being served on July 29, 2009.  Ms. Wakazuru will suffer extreme prejudice if default judgment is not entered in her favor, because Title Guaranty will not cancel escrow and release the deposit without either joint instructions or a court order.  Thus, the prejudice factor weighs in favor of default judgment.

2.      Merits of Wakazuru's Substantive Claims

The First Amended Complaint is very simple and contains a single count for declaratory relief.  As indicated in paragraphs 7 through 9 of the First Amended Complaint, the parties entered into an agreement to purchase the Property in 2005.

Mitsuda agreed in paragraph C-28 of the DROA that if he defaulted Ms. Wakazuru could "retain the initial deposit . . . as liquidated damages . . . ."  DROA at 5 ¶ C-28.

In accordance with paragraph C-67.2 of the Counteroffer, Mitsuda was required to close escrow within ten days after the sublease for stall 54 was assigned to Ms. Wakazuru.  See Counteroffer at 2 ¶ C-67.2.

On August 24, 2005, the assignment of the sublease for stall 54 was recorded in favor of Ms. Wakazuru and Mitsuda was directed to close as required by the Counteroffer.

Mitsuda subsequently refused to close escrow and, consequently, breached the DROA and forfeited the Deposit.

Ms. Wakazuru made repeated attempts to cancel escrow, but Title Guaranty was unable to do so without joint instructions from the buyer and seller.

Mitsuda failed to directly respond to Title Guaranty's requests for joint instructions to cancel escrow.

Mitsuda breached the DROA by failing to close escrow and, by the terms of the DROA and Counteroffer, has forfeited the Deposit.  Thus, this factor weighs in favor of default judgment.

3.    Sufficiency of the First Amended Complaint

The sufficiency of the First Amended Complaint also weighs in favor of default judgment.  The allegations in the First Amended Complaint are sufficiently pleaded and supported by facts in the record.

4.    Sum of Money at Stake

"A default judgment generally is disfavored if there is a large sum of money involved."  Valvanis v. Milgroom, Civil No. 06-00144 JMS-KSC, 2009 WL 1561571, at * 10 (citing Eitel, 782 F.2d at 1472).  In this case, despite the fact

Wakazuru can seek special damages, the only category of "damages" being sought is the forfeiture of the $10,000 Deposit, which has been held by Title Guaranty since 2005, in accordance with paragraph C-28 of the DROA. This factor weighs in favor of entry of default judgment.

     5.    <u>Possibility of Dispute Concerning Material Facts</u>

It is undisputed that the parties entered into the DROA. It is undisputed that Wakazuru was ready, willing, and able to close escrow. It is undisputed that Mitsuda breached the DROA by failing to close escrow, and compounded his breach by refusing to permit the cancellation of escrow for the past four years. It is undisputed that the plain language of the DROA permits Wakazuru to retain the initial deposit if the buyer breached the DROA. Therefore, this factor weighs in favor of granting default judgment.

     6.    <u>Whether Default was Due to Excusable Neglect</u>

There is no evidence in the record that Mitsuda's failure to answer or otherwise plead in response to the First Amended Complaint was due to excusable neglect. In fact, on Monday, August 24, 2009, Wakazuru's counsel received a voicemail message from Harold Chu, Esq., who indicated he was in the process of being retained and wanted to know when the answer to the First Amended Complaint was due. On August 25, 2009, Wakazuru's counsel left a voicemail message for Mr. Chu informing him that Entry of Default had already been

entered, a motion for default judgment would be filed shortly, and that if Mitsuda successfully moved to set aside the default, Wakazuru would seek actual damages and attorneys' fees, in addition to the Deposit.  Mr. Chu did not respond to the August 25 voicemail message and no motion to set aside the Entry of Default has been filed.  There was also no appearance by Wakazuru, Mr. Chu, or any other representative on behalf of Wakazuru at the October 5, 2009 hearing on the Motion.  Thus, this factor weighs in favor of entry of default judgment.

7.   Policy Favoring Decisions on the Merits

Although the Court recognizes the strong policy favoring resolution of cases on their merits, proceeding with the instant litigation against Mitsuda would be futile, given Mitsuda's failure to make an appearance in this case, despite being served with the Motion.  In addition, the Property has been trapped in escrow for four years, with Mitsuda refusing to give joint instructions to Title Guaranty or make any effort to perform the DROA.  It is clear Mitsuda has no intention of defending this matter, so failing to enter default judgment based on public policy would unduly prejudice Wakazuru.

In sum, the Court finds that the foregoing factors weigh in favor of entering default judgment Mitsuda.

28855-1 / 1038674.1

C.    <u>Relief Sought</u>

The Court finds that Wakazuru is entitled to a declaration that Mitsuda breached the DROA.

The plain language of the DROA entitles Ms. Wakazuru to retain the Deposit.  Therefore, the Court finds that Wakazuru is entitled to the Deposit currently held by Title Guaranty.

CONCLUSION

In accordance with the foregoing, the Court FINDS AND RECOMMENDS that Wakazuru's Motion for Default Judgment Against Defendant Bruce Shigeo Mitsuda, filed September 1, 2009, be GRANTED.  Specifically, the Court recommends that default judgment be entered against Mitsuda, along with the following remedies:  1) a declaration that Mitsuda breached the DROA; and 2) an order directing Title Guaranty to release the $10,000 escrow deposit regarding the Property to Wakazuru.

IT IS SO FOUND AND RECOMMENDED.

DATED:     Honolulu, Hawaii, October 13, 2009.



_____
Kevin S.C. Chang
United States Magistrate Judge

28855-1 / 1038674.1